Nathan T. Jackson, Bar No. 285620
njackson@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
400 Capitol Mall, Suite 1260
Sacramento, CA 95814
Telephone: 916-584-7000
Facsimile: 916-584-7083

Attorney for Defendant CITY OF ROCKLIN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO

| | |
|---|---|
| RU HOGAN,<br><br>            Plaintiff,<br><br>v.<br><br>CITY OF ROCKLIN, and DOES 1 THROUGH 100,<br><br>            Defendants. | Case No.: 2:24-cv-03566-JAM-SCR<br><br>Complaint Filed: November 1, 2023<br>FAC Filed: January 16, 2025<br><br>**DEFENDANT CITY OF ROCKLIN'S NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF RU HOGAN'S FIRST AMENDED COMPLAINT PURSUANT TO ANTI-SLAPP STATUTE, CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16, AND REQUEST FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 11, 2025<br>Time: 01:00 p.m.<br>Courtroom: 6 |

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Tuesday, March 11, 2025, at 01:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled Court, located at 501 I Street, 14th Floor, Sacramento, California 95814, Defendant CITY OF ROCKLIN ("Defendant" or "City") will and hereby does move this Court for an order, pursuant to California Code of Civil Procedure section 425.16, to strike from Plaintiff Ru Hogan's ("Plaintiff") First Amended Complaint ("FAC") the following causes of action:

    1.    First Cause of Action for "Intentional Infliction of Emotional Distress";

1

2. Second Cause of Action for "Housing Discrimination based on Race/Disability/National Origin", to the extent this alleges a violation of the California Fair Housing and Employment Act;

3. Fourth Cause of Action for "Negligent Infliction of Mental Suffering".

Defendant's motion is made on the grounds that: (1) the claims for relief set forth in the FAC arise from protected activity under California's anti-SLAPP statute, Cal. Civ. Proc. Code, § 425.16(e)(1)-(4); and (2) Plaintiff cannot establish a probability of prevailing on any of the claims for relief at issue by this Motion. *Id*. at § 425.16(b)(1).

In addition, pursuant to Code of Civil Procedure section 425.16(c), Defendant requests that this Court award it attorneys' fees and costs for the litigation of this Motion. Defendant intends to seek fees and costs via a separately noticed motion following the Court's ruling.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Nathan T. Jackson, David Mohlenbrok, and Heather Rodgers, any and all matters subject to judicial notice as indicated in Defendant's Request for Judicial Notice filed concurrently herewith, all pleadings, papers, and records on file herein, and any such further matters or evidence that may be presented at or before the hearing.

## **MEET & CONFER EFFORTS**

The FAC was filed on January 16, 2025, with a pleading response deadline of January 30, 2025. On January 20, 2025, Defendant's counsel, Nathan Jackson, sent Plaintiff's counsel, Thomas Hogan, a meet and confer correspondence and requested a phone call. Jackson Decl. ¶¶ 4-6, Exhs. A-B. Mr. Jackson attempted to call Mr. Hogan unsuccessfully on January 22, 2025. *Ibid*. On January 23, 2025, Mr. Hogan sent Mr. Jackson a correspondence asking for more time to confer while he consulted with outside counsel, but he would not agree to a meet and confer call or substantively respond to Mr. Jackson's initial meet and confer. *Ibid.* Mr. Jackson asked for a phone call to discuss his request for additional time, but Mr. Hogan declined to speak with Mr. Jackson. *Ibid.* Mr. Hogan has **never** agreed to speak with Mr. Jackson in the past. *Ibid.*

///

///

Dated: January 26, 2025                     LIEBERT CASSIDY WHITMORE

                                       By:    */s/ Nathan T. Jackson*
                                              Nathan T. Jackson
                                              Attorney for Defendant CITY OF
                                              ROCKLIN

Liebert Cassidy Whitmore
A Professional Law Corporation
400 Capitol Mall, Suite 1260
Sacramento, CA 95814

# MEMORANDUM OF POINTS AND AUTHORITIES

This motion filed pursuant to California's anti-SLAPP statute (Code Civ. Proc., § 425.16) pertains to the First Amended Complaint ("FAC") filed by Plaintiff RU HOGAN ("Plaintiff" or "Hogan") against Defendant CITY OF ROCKLIN ("Defendant" or "City"). Defendant previously brought an anti-SLAPP motion against Plaintiff's original Complaint, jointly with former defendant David Mohlenbrok. Plaintiff did not respond on the merits, but instead filed the FAC. The FAC drops Mohlenbrok as a defendant but is otherwise nearly identical to the original Complaint, arises from the same allegations of fact, and contains the same legal deficiencies. The City, as the sole remaining defendant, now renews its motion for an order striking all state law claims from the FAC.

## I.     INTRODUCTION

California's "anti-SLAPP" statute, Code of Civil Procedure section 425.16, "allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." *Wilson v. Cable News Network, Inc.* 7 Cal.5th 871, 880-881 (2019). "Under the statute, a civil defendant may move to strike a cause of action based on an 'act in furtherance of [the] right to petition or free speech.'" *Metabolife Int'l v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001).

Plaintiff's lawsuit revolves around a flock of chickens that she has kept in the backyard of her property, located within City limits, since at least 2021. Plaintiff admits that she began keeping these chickens in violation of animal control regulations contained in the Rocklin Municipal Code ("RMC"). Plaintiff's neighbors – who considered the chickens a nuisance – exercised their free speech and petition rights by reporting the matter to law enforcement and other City officials.

In response to the neighbors' protected speech and petitioning activity, the City began efforts to enforce its ordinances. Plaintiff was issued several citations for violating the RMC without having first secured a variance. She later attempted to appeal those citations, and that administrative appeal process is part of this lawsuit. Plaintiff petitioned the City for permission to keep the chickens as a "reasonable accommodation" for an asserted disability. The City, acting primarily through Mohlenbrok (the City's Community Development Director) began the process of evaluating Plaintiff's petition, ultimately granting Plaintiff an accommodation.

Plaintiff is now bringing various legal claims arising directly from the actions of City

officials and employees in processing and handling the petitions from Plaintiff's neighbors and from Plaintiff herself. Because both the neighbors' conduct and Plaintiff's own request for a disability accommodation were constitutionally protected petitioning activity, the City's handling of these petitions is protected conduct under the anti-SLAPP statute, both because it concerned an issue under review by an official proceeding, and because it furthered the right to petition of Plaintiff, her neighbors, and similarly situated citizens. Notably, a related court proceeding has already resulted in a state court specifically ruling that the communications between the City and Plaintiff's neighbors concerning Plaintiff's chickens were protected petitioning conduct; Plaintiff had a full and fair opportunity to litigate that issue and is now barred from arguing to the contrary.

This shifts the burden to Plaintiff to demonstrate, with competent admissible evidence, that she has a probability of prevailing on her claims. Plaintiff cannot meet this burden because her tort claims are barred by statutory immunity, and her claim under the California Fair Employment and Housing Act ("FEHA") has no merit on the facts of this case. Indeed, Plaintiff failed to inform this – or any other – Court that she was granted an accommodation, and that her accommodation remains valid to this day. Plaintiff refuses to allow City officials to inspect her property to ensure she is complying with the conditions of the accommodation.

For these reasons, Defendant respectfully asks this Court for an order striking all state law claims from Plaintiff's FAC pursuant to California's anti-SLAPP law.

## II. STATEMENT OF FACTS

### A. BACKGROUND

Plaintiff and her husband (who is also Plaintiff's attorney) live in the City of Rocklin. Their backyard shares a common boundary with the home of Bedford Jay Williams and Christina Williams (collectively, "the Williamses"). At some point during or prior to 2021, Plaintiff began keeping chickens in her backyard. Doc. 9 (hereafter "FAC") at p. 2 ¶ 1. According to Plaintiff, she adopted the chickens to help her with feelings of isolation resulting from working from home during the COVID-19 pandemic, and/or to help with alleged post-traumatic stress disorder resulting from a criminal assault that occurred in September 2021. *Ibid.*

The RMC contains restrictions on the keeping of domestic fowl, including chickens, within

Liebert Cassidy Whitmore
A Professional Law Corporation
400 Capitol Mall, Suite 1260
Sacramento, CA 95814

City limits. (Defendant's Request for Judicial Notice ("RJN"), Exh. A.[1]) RMC Section 6.44.020 in particular provides that "*Domestic fowl shall be kept in a sanitary enclosure which shall not be located within twenty feet of any building or property line*." Due to the shape of Plaintiff's lot and the placement of her house, there is no possible location for a chicken coop on Plaintiff's property that would comply with the City ordinance without a variance. FAC at p. 4 ¶ 4.

### B. PLAINTIFF'S NEIGHBORS COMPLAIN TO THE CITY

The Williamses objected to the presence of Plaintiff's chickens, citing noise and odors. In late March or early April 2022, they contacted City of Rocklin Animal Control to report the matter. (Declaration of Bedford Jay Williams ("BJW Decl.") enclosed as RJN Exh. G, ¶¶ 6-7.) After doing so, the Williamses began taking photos and video of the chickens free ranging in Plaintiff's backyard to document their complaint. (BJW Decl. ¶ 33; Declaration of Christina Williams ("CW Decl.") enclosed as RJN Exh. F ¶¶ 6, 12-13, 36.) The Williamses communicated with City officials in the summer and fall of 2022, including contacting the Rocklin Police Department, providing Animal Control Officer Heather Rodgers with the photographs of Plaintiff's chickens, and communicating with the City's Mayor and City Manager. (BJW Decl. ¶¶ 9-16; CW Decl. ¶¶ 7-15.) Officer Rodgers met with the Hogans at least twice before the summer of 2022 to explain the City's regulations. (Declaration of Heather Rodgers ("HR Decl.") ¶ 4.

### C. PLAINTIFF MAKES A FORMAL ACCOMMODATION REQUEST

On October 23, 2022, Plaintiff emailed Mohlenbrok an application for accommodation in the enforcement of the City's domestic fowl ordinance. (Declaration of David Mohlenbrok ("DM Decl.") ¶ 6 and Exh. A thereto.) Plaintiff asserted she suffered from isolation, depression, and anxiety, and requested a "minor adjustment" to RMC section 6.44.020 to allow her to keep hens on her property. Specifically, she requested permission to keep a chicken coop less than 20 feet from her own house and the property line on the west side of her property – on the other side of which is the parking lot to an apartment complex – while remaining at least 20 feet from all other structures and property lines. Plaintiff alleged she was allergic to "some other pets". *Ibid*. Attached to Plaintiff's application was a letter dated April 26, 2021, from Melinda Keenan, a licensed

---

[1] Exh. A to Defendants' RJN is a true and correct copy of Chapter 6.44 of the RMC.

psychologist. The letter stated that she had "prescribed" Plaintiff an emotional support animal due to isolation, depression, and anxiety resulting from working from home during COVID; that Plaintiff "did not feel up to" caring for a dog or cat; that Plaintiff began raising chickens instead; and that the chickens' presence was necessary for her emotional health. DM Decl. ¶ 6 and Exh. A.

On October 26, 2022, Mohlenbrok responded to Plaintiff's email. He noted that the certification letter from the therapist was over a year and a half old, and he requested that Plaintiff submit an updated letter. DM Decl. ¶ 7 and Exh. B. Mohlenbrok also noted that he only had 5 days to make a decision on Plaintiff's request, so time was of the essence. *Ibid*. The five-day deadline comes from RMC § 17.83.040(a), which requires the Community Development Director to make a written determination within five working days of receiving a request. In further correspondence the following day, October 27, 2022, Mohlenbrok requested the dimensions of the coop and clarification on whether Plaintiff was specifically allergic to dogs and cats. Plaintiff responded with the coop dimensions and stated that dogs and cats "trigger" her allergies. DM Decl. ¶ 7 and Exh. B. Plaintiff also provided a second doctor's note dated October 27, 2022. *Ibid.*

On October 28, 2022, Mohlenbrok conditionally approved Plaintiff's accommodation. DM Decl. ¶ 8 and Exh. C. The approval came with three conditions: (1) a doctor's note confirming that Plaintiff's condition constituted a disability under relevant laws; (2) the chicken enclosure must be kept in Plaintiff's back yard, at least 20 feet from the rear and eastern property lines (shared with neighbors), at least 5 feet from the western property line (adjoining the parking lot) and at least 5 feet from her own house; and (3) Plaintiff would remain subject to the requirement in RMC § 6.44.020 that the hens "be kept in a sanitary enclosure." *Ibid*. On November 8, 2022, Plaintiff provided Mohlenbrok with a more detailed letter from Dr. Keenan which specified that Plaintiff's condition rose to the level of a disability under the ADA. DM Decl. ¶ 9 and Exh. D.

### D. PLAINTIFF'S NEIGHBORS PETITION THE CITY AND MOHLENBROK

In late October 2022, Mr. Williams spoke with Mohlenbrok by phone about Plaintiff's chickens. Mohlenbrok informed Mr. Williams that Plaintiff was seeking an exception to the City ordinance as a disability accommodation. BJW Decl. ¶ 18; DM Decl. ¶ 16. On October 31, 2022, Mohlenbrok sent an email to Mr. Williams, to which he attached his October 28 letter to Plaintiff

conditionally granting her an accommodation. Mohlenbrok also attached a copy of the RMC provisions concerning appeals of his decision, and informed Mr. Williams that the filing fee for an appeal to the Rocklin Planning Commission was $4,456.00. BJW Decl. ¶ 17; DM Decl. ¶ 18.

On November 8, 2022, Ralph E. Laird, an attorney representing the Williamses, wrote a letter to Mohlenbrok. DM Decl. ¶ 11 and Exh. E. The letter asserted the Hogans were not housing the chickens in a sanitary enclosure, resulting in rodents and foul odors that deprived the Williamses of fresh air. Laird also included photographic evidence showing the chickens being allowed to free-roam, in violation of the RMC, and the conditions on Plaintiff's accommodation. *Ibid*.

### E. CITY OFFICIALS ISSUE CITATIONS FOR RMC VIOLATIONS

Animal Control Officer Rodgers spoke with the Hogans on several occasions over the course of several months, in an informal effort to have them comply with the RMC. HR Decl. ¶¶ 4-5. On October 27, 2022, Rodgers issued the Hogans a citation and $100 fine for violating RMC § 6.44.020 by failing to keep the chickens within an enclosure, after she personally observed them free roaming. DM Decl. ¶ 12(a) and Exh. F; HR Decl. ¶ 6, Exh. A. On November 4, 2022, Rodgers issued Mrs. Hogan a second citation, this time with a $250 fine and an explanatory letter. DM Decl. ¶ 12(b) and Exh. G; HR Decl. ¶ 7, Exhs. B and C. On November 9, 2022, Rodgers issued another citation and $500 fine. HR Decl. ¶ 8, Exh. D.

### F. MOHLENBROK DENIES THE ACCOMMODATION DUE TO PLAINTIFF'S REPEATED FAILURE TO COMPLY WITH CONDITIONS

On November 14, 2022, Mohlenbrok sent Plaintiff a final determination of her request for accommodation. DM Decl. ¶ 13 and Exh. J. The letter stated that based on the information provided to him, including Plaintiff's failure to keep the chickens in a sanitary enclosure as required, Mohlenbrok was denying the accommodation. *Ibid*. Mohlenbrok tried to hand-deliver the letter, but no one answered the door. He therefore emailed the letter to Plaintiff the same day. *Ibid*.

### G. THE CITY CONTINUES DISCUSSIONS WITH PLAINTIFF, AND EVENTUALLY RE-GRANTS CONDITIONAL APPROVAL

On November 17, 2022, Plaintiff wrote Mohlenbrok a letter which threatened litigation and, as an "offer of compromise", asked Mohlenbrok to reconsider granting the accommodation and to

Liebert Cassidy Whitmore
A Professional Law Corporation
400 Capitol Mall, Suite 1260
Sacramento, CA 95814

8
Defendant's Notice of Special Motion and Special Motion to Strike Pursuant to Anti-SLAPP Statute
12738461.2 RO050-020

rescind any and all fines levied by the City. DM Decl. ¶ 14, Exh. K.

In late November 2022, Mohlenbrok personally visited Plaintiff's property with the Chief of Police to view the chicken coop and run. Plaintiff refused them access. FAC at p. 7 ¶¶ 11-12; DM Decl. ¶ 15. During the course of the visit, Mohlenbrok inadvertently left behind a manila envelope containing a copy of his notes and copies of his correspondence with Laird. FAC at p. 7 ¶ 12; DM Decl. ¶ 15. One notation in Mohlenbrok's notes states "if future correct request then push into a corner". DM Decl. ¶ 15. This notation is referenced (and misquoted) repeatedly in Plaintiff's FAC. FAC p. 5 ¶ 7, p. 7 ¶¶ 10-11, p. 9 ¶ 17. What Mohlenbrok meant by this notation was that if Plaintiff were able to correct the compliance issues with keeping the chickens enclosed, the City would be willing to grant the accommodation so long as the coop were pushed into the corner of Plaintiff's backyard, as far away from the Williamses' property as possible. DM Decl. ¶ 15.

Mohlenbrok and Plaintiff continued discussions regarding a potential accommodation through late November and into early December. Communications between them were slightly delayed on account of Plaintiff traveling to China and being quarantined. DM Decl. ¶ 16.

On January 6, 2023, Mohlenbrok both emailed and physically delivered to Plaintiff a new response to her accommodation request. DM Decl. ¶ 18. Mohlenbrok granted the request with several conditions: the coop and run had to be located along the western side of Plaintiff's house, protruding no further into the back yard than the rear of Plaintiff's house; the run was to be no larger than 14 feet long by 5 feet wide; the coop was to be made of non-permeable solid materials; the run had to be completely enclosed on the sides and top; there would be no more than 5 hens, to remain within the coop or run with no free ranging; the coop and run had to be kept in sanitary conditions; the hens had to be kept in the coop at night, not in the run; and any audible noise during the daytime had to be minimized to the extent possible. *Id.* at Exh. M.

Thereafter, Mohlenbrok emailed Plaintiff and her husband several times to make arrangements to view the placement and condition of the coop. To date, Mohlenbrok has been unable to gain access to the Hogans' property to confirm compliance. *Id.* at ¶ 19.

### H. PLAINTIFF APPEALS THE ADMINISTRATIVE CITATIONS AND FINES

Plaintiff requested an administrative appeal from the animal control citations and fines

Liebert Cassidy Whitmore
A Professional Law Corporation
400 Capitol Mall, Suite 1260
Sacramento, CA 95814

issued against her. DM Decl. ¶ 19. On or about March 24, 2023, an administrative hearing was scheduled to hear Plaintiff's appeal. *Ibid*. During this hearing, Plaintiff's husband (acting as her attorney) was permitted to call and cross-examine witnesses. Mr. Hogan cross-examined both Officer Rodgers and Mohlenbrok. *Ibid*. On March 28, 2023, the Hearing Officer issued a decision denying the Hogans' appeal and upholding the citations on the grounds that (1) the fowl were uncaged, and (2) their enclosure was within twenty (20) feet of a building. *Id*. at Exh. N.

## I. LITIGATION WITH PLAINTIFF'S NEIGHBORS RESULT IN SEVERAL OF PLAINTIFF'S CLAIMS BEING STRUCK AS SLAPP CLAIMS

On February 6, 2023, Plaintiff filed suit against her neighbors in the Superior Court of California, County of Placer. The case, which concerns their dispute over Plaintiff's chickens, remains pending as *Hogan v. Williams*, case no. S-CV-0049882. (RJN, Exh. C.) Plaintiff sued the Williamses for intentional infliction of emotional distress, invasion of privacy, civil harassment, civil conspiracy (specifically, conspiring with the City), and housing discrimination. [2]

On March 20, 2023, the Williamses brought a special motion to strike under California Code of Civil Procedure section 425.16 against Plaintiff's complaint. They sought to strike various specific language, as well as Plaintiff's entire causes of action against them for housing discrimination, civil conspiracy, and invasion of privacy. (RJN, Exh. E.) In support of their motion, the Williamses argued that they had exercised their constitutional free speech and petition rights by reporting Plaintiff's RMC violations to law enforcement and other City officials. (RJN, Exh. F.)

After receiving briefing and (on Plaintiff's request) hearing oral argument, the Superior Court issued a ruling on the Williamses' anti-SLAPP motion on August 25, 2023. (RJN Exh. J.) The Superior Court expressly found that the Williamses' communications with the City of Rocklin to enforce the City ordinances, as well as their efforts to influence the City's decision on Plaintiff's accommodation request, were protected activity. The Court further found that the challenged claims expressly stated they were based on these protected communications, and that Plaintiff failed to show a sufficient probability she would prevail; as such, the Court granted the motion and ordered

---

[2] In her complaint against the Williamses, Plaintiff expressly states an intent to sue the City and Mohlenbrok through an amendment; however, any such cause of action was struck in the superior court's anti-SLAPP ruling. Plaintiff's then re-filed those struck claims in a new lawsuit.

the challenged claims and allegations struck from the complaint. *Ibid*.

## III. <u>LEGAL DISCUSSION</u>

### A. <u>APPLICABLE LEGAL STANDARD</u>

Code of Civil Procedure section 425.16, commonly referred to as the "anti-SLAPP" statute, provides a defendant the right to make a special motion to strike any cause of action arising from the right of petition or free speech. Cal. Code Civ. Proc., § 425.16 (b)(l).

Protected conduct includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue of public interest." Cal. Code Civ. Proc., § 425.16 (e).)

An anti-SLAPP motion involves a two-step process. First, the court must decide whether the defendant has made a showing that the cause of action or claim subject to the motion arises from protected activity. *City of Cotati v. Cashman*, 29 Cal.4th 69, 76 (2002).

> A defendant's burden on the first prong is not an onerous one. A defendant need only make a prima facie showing that plaintiff's claims arise from the defendant's constitutionally protected free speech or petition rights. [U]nder the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary. Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens.

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal.App.5th 95, 112 (2017).

Second, if the defendant shows that the plaintiff's claims arise from protected activity, the burden shifts to the plaintiff to demonstrate a probability that he will prevail. *City of Cotati, supra,* 29 Cal.4th at p. 69. "[I]n cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity. Unless the plaintiff can do so, the claim and its corresponding

11

Defendant's Notice of Special Motion and Special Motion to Strike Pursuant to Anti-SLAPP Statute
12738461.2 RO050-020

allegations must be stricken. Neither the form of the complaint nor the primary right at stake is determinative." *Baral v Schnitt*, 1 Cal.5th 376, 395 (2016). Plaintiff cannot avoid an anti-SLAPP motion through artful pleading. "[A] plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a *garden variety* tort claim when in fact the liability claim is predicated on protected speech or conduct." *Ramona Unified Sch. Dist. v. Tsiknas*, 135 Cal.App.4th 510, 519 (2005) (emphasis in original); Cal. Code Civ. Proc., § 425.16 (b)(2) ("In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.")

**B.** **THIS ENTIRE LAWSUIT ARISES FROM PROTECTED CONDUCT**

**1.** **Plaintiff Alleges Only Protected Conduct By City Employees**

As noted above, protected activity includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16, subdivisions (e)(1), (e)(2) and (e)(4). Notably, the conduct in question need not be taken in furtherance of a person's *own* right of petition or free speech. In *Vergos v. McNeal*, 146 Cal.App.4th 1387, 1399-1400 (2007), the California Court of Appeal found that a managerial employee's conduct in hearing, processing, and deciding employee grievances was protected action in furtherance of the constitutional right to petition even though it was not *her own* right to petition at stake.

Here, all alleged conduct by City employees amounts to protected conduct under the anti-SLAPP statute for several reasons. First, several of the alleged actions by Mohlenbrok and Officer Rodgers are protected communicative statements in their own right. Plaintiff makes various allegations about statements Officer Rodgers made under oath at the citation appeal hearing. FAC at p. 8 ¶ 14. These statements are patently protected under California Code of Civil Procedure section 425.16, subdivision (e)(1) as oral statements made before an official proceeding.

12

Similarly, Plaintiff alleges that Mohlenbrok communicated with the Williamses' attorney regarding her accommodation request and that these communications amount to a "scheme" concocted between them. FAC at p. 5 ¶ 7. Because Mohlenbrok was currently reviewing both Plaintiff's accommodation request and the Williamses' complaints regarding the chickens, any communications between Mohlenbrok and the Williamses concerning Plaintiff's chickens clearly constitute statements made in connection with an issue under review by an executive official of the City, and are protected under California Code of Civil Procedure section 425.16, subdivision (e)(2).

Moreover, *all* of the alleged conduct described in Plaintiff's Complaint essentially amounts to conduct by City officials engaged in "hearing, processing, and deciding" one or both of two constitutionally protected petitions. Such conduct is protected under *Vergos v. McNeal* because a ruling to the contrary could result in public employees' reluctance to perform their job duties and process petitions falling within their authority. *Vergos, supra*, 146 Cal.App.4th at p. 1398.

Specifically, all Mohlenbrok's communications with Plaintiff, including his requests for additional information and documentation, were patently made within the scope of his processing of Plaintiff's own petition for an accommodation. And his communications with the Williamses were simultaneously part of his consideration of Plaintiff's petition as well as that of the Williamses and thus furthered *both* of their rights to petition the government. Similarly, to the extent Plaintiff's claims are based on Officer Rodgers's conduct, her investigations and issuing of citations to Plaintiff for violating the City ordinance were clearly conduct taken in furtherance of the Williamses' right of petition; indeed, Plaintiff specifically alleges that Rodgers began issuing citations as a direct result of complaints from Plaintiff's neighbors. FAC at p. 4 ¶ 4.

### 2. **Plaintiff Is Barred From Challenging The Protected Nature Of Communications Between The Williamses And The City**

Under the doctrine of issue preclusion, when an issue of fact or law is actually litigated by a valid and final judgment, that determination is binding in future suits on those who were a party to the first proceeding, or in privity with a party to the first proceeding. *Frankfort Dig. Servs. v. Kistler*, 477 F.3d 1117, 1122 (9th Cir. 2007). California courts have applied issue preclusion to prevent re-litigation of primary rights previously decided by way of an anti-SLAPP motion. *South*

Defendant's Notice of Special Motion and Special Motion to Strike Pursuant to Anti-SLAPP Statute
12738461.2 RO050-020

*Sutter, LLC v. LJ Sutter Partners, LP*, 193 Cal.App.4th 634, 658-659 (2011).

Here, the Williamses already prevailed on an anti-SLAPP motion filed in state court, with the court specifically finding that their efforts to have the City enforce its ordinance and deny Plaintiff's accommodation were protected petitioning activity. RJN, Exh. J. Because Plaintiff was a party to that proceeding, the state court finding is binding on Plaintiff.

### 3. The Challenged Counts "Arise From" Protected Activity

Defendant is challenging all three of Plaintiff's state law causes of action for IIED, NIED, and violation of the FEHA. As discussed above, all of the alleged actions by Defendant or any City employee constitute protected activity under the anti-SLAPP statute. Accordingly, all Plaintiff's causes of action necessarily "arise from" the allegations of protected conduct.

## C. PLAINTIFF HAS NO PROBABILITY OF PREVAILING ON THE MERITS

Once it is determined that an act in furtherance of protected expression is being challenged, the plaintiff must show a "reasonable probability" of prevailing in its claims for those claims to survive dismissal. *Metabolife Int'l, supra*, 264 F.3d at 840, citing *Wilcox v. Superior Court*, 33 Cal.Rptr.2d 446, 455 (1994). To do this, the plaintiff must demonstrate that "the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.*, citing *Wilcox, supra*, 33 Cal.Rptr.2d at 454. This burden is "much like that used in determining a motion for nonsuit or directed verdict," which mandates dismissal when "no reasonable jury" could find for the plaintiff. *Id.*, citing *Wilcox, supra*, 33 Cal.Rptr.2d at 454. Here, Defendant is challenging all three of Plaintiff's state law causes of action. As will be discussed below, Plaintiff cannot show a "reasonable probability" of prevailing.

### 1. Plaintiff's Tort Claims Fail As A Matter Of Law

California Government Code section 815 provides public agencies with immunity from all common law forms of liability except where a statute specifically provides otherwise. Cal. Gov. Code, § 815; *Miklosy v. Regents of University of California*, 44 Cal.4th 876, 899 (2008). This immunity applies to claims for intentional and negligent infliction of emotional distress. *Solesbee v. County of Inyo*, 2014 U.S. Dist. LEXIS 109318, at *30 (E.D. Cal. 2014) ("A claim for intentional infliction of emotional distress is a common law claim, not a statutory claim".); *Fagan v. San*

*Bernardino City Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 132734, at *21 (C.D. Cal. 2017); citing *McAllister v. Los Angeles Unified School Dist.*, 216 Cal.App.4th 1198, 1218 (2013).

A public entity can be held liable under a *respondeat superior* theory for injuries caused by an act or omission of the agency's employee on a matter within the scope of employment, but *only if* the employee could be held personally responsible. Cal. Gov. Code, § 815.2, subd. (a). Public entities *cannot* be held liable for employees' conduct where the employee is themselves immune from liability. Cal. Gov. Code, § 815.2, subd. (b). And under state law, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, *whether or not* such discretion be abused." Cal. Gov. Code, § 820.2 (emphasis added). Similarly, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, *even if* he acts maliciously and without probable cause." Cal. Gov. Code, § 821.6 (emphasis added).

Here, the only conduct Plaintiff alleges to have been taken by any City officials or agents – most notably Mohlenbrok and Rodgers – include their handling of complaints regarding Plaintiff's chickens, processing Plaintiff's application for an accommodation, and issuing citations and fines over Plaintiff's non-compliance with the City's animal control ordinance. All of the alleged actions taken by both Mohlenbrok and Rodgers are acts within the scope of discretion vested in them by their respective job duties. The allegations concerning Rodgers issuing citations and testifying at the administrative appeal hearing also constitute acts initiating or prosecuting administrative proceedings. For this reason, Mohlenbrok and Rodgers would both have statutory immunity from tort liability for all alleged conduct attributed to them. Accordingly, the City is also immune.

Moreover, the alleged conduct would not support Plaintiff's tort claims anyway. "Conduct, to be 'outrageous', must be so extreme as to exceed all bounds of that usually tolerated in a civilized society…" *Yau v. Allen,* 229 Cal.App.4th 144, 160-161 (2014); *Gabrielle A. v. County of Orange,* 10 Cal.App.5th 1268, 1289 (2017) (prima facie case of IIED requires showing of outrageous conduct). A party is not subject to liability for infliction of emotional distress when it has merely pursued its own interests and asserted its legal rights so long as the manner in which it did so is not

15

itself outrageous. *Kruse v. Bank of Am.*, 202 Cal.App.3d 38, 67 (1988). Here, the alleged conduct is well within the normal course of conduct of City operations, and the City's code enforcement efforts amount to nothing more than the City neutrally enforcing its own laws in the face of Plaintiff's RMC violations and her failure to comply with the terms of the accommodation granted. City officials enforcing the law in compliance with their job duties is not negligent or outrageous.

The litigation privilege also defeats Plaintiff's claims. This privilege protects statements made in an "official proceeding authorized by law," including communications "intended to instigate official governmental investigation into wrongdoing." *Hagberg v. California Federal Bank,* 32 Cal.4th 350, 369 (2004) (superseded in part on other grounds); Civil Code § 47(b). The Williamses clearly petitioned the City for action in what they alleged was wrongdoing by Plaintiff, and Plaintiff is suing the City for responding to their clearly protected activities. It cannot be the case that the Williamses' actions are privileged, but the City's responsive communication is not.

### 2. **Plaintiff's FEHA Claim Fails Because Plaintiff Cannot Show That She Was Denied A Reasonable Accommodation**

California's Fair Employment and Housing Act ("FEHA") prohibits, as unlawful discrimination, a "refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." Cal. Gov. Code, § 12927(c)(1) (defining "discrimination"). Among other things, the FEHA makes it unlawful for a municipality to discriminate through public land use practices, decisions, and authorizations because of protected characteristics including disability. Cal. Gov. Code, § 12955(l).

To this end, the FEHA imposes an obligation to grant reasonable accommodations necessary to give an individual with a disability an equal opportunity to use and enjoy a housing opportunity. Cal. Code Regs., tit. 2, § 12176(a). To prevail, a plaintiff alleging failure to accommodate must show: (1) the existence of a covered handicap; (2) the defendant's knowledge or constructive knowledge of that handicap; (3) that an accommodation "may be necessary"; (4) that the accommodation is reasonable; and (5) the defendant refused to make the necessary and reasonable accommodation. *Salisbury v. City of Santa Monica*, 994 F.3d 852, 1061 (9th Cir. 2021),

Defendant's Notice of Special Motion and Special Motion to Strike Pursuant to Anti-SLAPP Statute

12738461.2 RO050-020

citing *Howard v. HMK Holdings, LLC,* 988 F.3d 1185, 1189-90 (9th Cir. 2021).

Here, Plaintiff cannot show that the City failed to make a necessary and reasonable accommodation, for one simple reason: The City granted the accommodation she requested. The City also continuously engaged with Plaintiff to secure her accommodation. DM Decl. at ¶¶ 14-19.

Plaintiff formally submitted her request for accommodation on October 23, 2022. Mohlenbrok promptly began reviewing and processing her request. The original request was severely deficient: It was supported by a medical certification more than a year and a half old; it failed to assert that Plaintiff's condition amounted to a disability under the law; and where the medical certification specifically suggested a cat or dog as an alternative to keeping chickens, it did not specify whether Plaintiff was *unable* to care for a cat or dog, just that Plaintiff "did not feel up to" having a dog or cat. Nonetheless, Mohlenbrok was able to obtain the missing information and documentation quickly, and conditionally granted the accommodation five business days later, exactly as required under the RMC. Plaintiff does not appear to challenge this much.

Plaintiff alleges that the City unreasonably retracted the original conditional approval. But Mohlenbrok's letter gives a specific, and reasonable, reason for the retraction: Plaintiff repeatedly violated the other still binding provisions of the RMC that governed her keeping of backyard hens. The accommodation Mohlenbrok granted still required the Hogans to keep the chickens within a sanitary enclosure. Instead, the City discovered – by photographic evidence and eyewitness accounts – that Plaintiff was allowing her chickens to free-roam her backyard outside their enclosure. DM Decl. ¶ 11; HR Decl. ¶ 6. At no point did Plaintiff request permission to allow her chickens to free-range, nor did she ever provide information suggesting that her disability required her to have free-ranging chickens to alleviate her disability. DM Decl. ¶ 13.

Moreover, after further discussions with Plaintiff, Mohlenbrok reinstated the accommodation in January 2023. DM Decl. ¶ 18. Tellingly, the FAC entirely omits the fact that the accommodation Plaintiff requested was already granted and has been in effect for over two years.

Plaintiff alleges that the City failed to meet its legal obligations because Animal Control continued to issue fines while the City was supposed to be engaged in the interactive process. However, this argument gets the process backwards. Even assuming Plaintiff's request was valid

and reasonable, Plaintiff had *no* right to keep chickens in a manner inconsistent with the RMC *unless and until* she got an accommodation from the City. The burden was on Plaintiff to request and receive an accommodation *before* getting the chickens. By choosing to keep chickens in violation of the RMC before the accommodation was in hand, Plaintiff assumed the risk of fines. And the fines issued in November 2022 were consistent with the terms of the conditional accommodation in effect at the time. The housing discrimination provisions in the FEHA expressly do not prohibit the "**nondiscriminatory enforcement**" of state and local public nuisance laws, provided that those laws do not otherwise conflict with the FEHA. (Cal. Gov. Code, § 12995(b).)

On the facts of this case, especially given that Plaintiff has already received, *and currently has*, the accommodation she requested, no reasonable jury could find that Defendant failed to grant Plaintiff a reasonable accommodation for her disability. As such, Plaintiff has no reasonable probability of prevailing, and this cause of action should be stricken.

Moreover, the California Civil Rights Department ("CRD") formally investigated Plaintiff's housing discrimination claim. Jackson Decl. ¶ 7. The fact the City granted Mrs. Hogan's variance request as a reasonable accommodation was repeatedly discussed with the CRD, and this information was also provided to the CRD. The CRD issued a "no cause" determination, which Plaintiff declined to appeal. Exh. K to RJN. This lawsuit is frivolous.

## IV. REQUEST FOR ATTORNEYS' FEES

The award of attorneys' fees to a defendant prevailing on an anti-SLAPP motion is mandatory. *Prehired, LLC v. Provins*, 2023 U.S. Dist. LEXIS 109494, *7 (E.D. Cal. 2023). Defendant intends to file a separate motion for fees under Cal. Code Civ. Proc., § 425.16 (c)(1).

## V. CONCLUSION

For all of the reasons described above, Defendant asks this Court to grant this motion and to strike all state law claims from Plaintiff's Complaint pursuant to California's anti-SLAPP law.

Dated: January 30, 2025        LIEBERT CASSIDY WHITMORE

By: */s/ Nathan T. Jackson*
   Nathan T. Jackson
   Attorney for Defendant CITY OF ROCKLIN

Liebert Cassidy Whitmore
A Professional Law Corporation
400 Capitol Mall, Suite 1260
Sacramento, CA 95814